## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRUSTEES OF THE LABORERS** | : | |
| **LOCAL NO. 1174 PENSION FUND, et** | : | **No. 1:22-cv-01160** |
| **al.,** | : | |
| **Plaintiffs** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | |
| **DB UTILITY CONTRACTORS, LLC** | : | |
| **d/b/a D&B UTILITY, INC.,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court is Plaintiffs Trustees of the Laborers Local No. 1174 Pension Fund,

Trustees of the Laborers Local No. 1174 Welfare Fund, and Trustees of the Laborers Local No.

1174 Annuity Fund (collectively, "Plaintiffs" or "Benefit Funds")' motion for default judgment

against. Defendant DB Utility Contractors, LLC d/b/a D&B Utility, Inc.  (Doc. No. 7.)  For the

reasons that follow, the Court will grant Plaintiffs' motion and enter default judgment against

Defendant and in favor of Plaintiffs.

## I.     BACKGROUND

Plaintiffs commenced the above-captioned action on July 26, 2022, seeking to recover

unpaid contributions, pre-judgment interest on and liquidated damages for unpaid and late-paid

contributions, as well as attorney's fees and court costs, from Defendant pursuant to Section 502

of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132.

(Doc. No. 1.)  Each Plaintiff represents that it is a multiemployer employee benefit plan (id. ¶¶ 1-

3) and that Defendant was bound to a collective bargaining agreement ("CBA") with Laborers

Union Local No. 1174, AFL-CIO, that required "Defendant to submit contribution reports and

make contribution payments to the Benefit Funds for hours its employees perform work covered

by the collective bargaining agreement."  (Id. ¶ 7.)  Plaintiffs aver that Defendant "employed

certain employees covered by the Collective Bargaining Agreement but failed to report and pay the amounts when due to the Benefit Funds for work performed in May 2021 through July 2021, and December 2021 through February 2022, as required by the Collective Bargaining Agreement and the Benefit Funds' Restated Agreements and Declarations of Trust." (Id. ¶ 13.)

A review of the docket reveals that service of the complaint upon Defendant was effectuated as follows.  On August 18, 2022, a private process server served Defendant at its current address by handing a copy of the summons and complaint to Bruno Ventresca, who was identified as an owner in the affidavit of service.[1]  See (Doc. Nos. 4, 4-1, 4-2); see, e.g., Trustees of United Food & Com. Workers Union Loc. 312 Benefit Fund v. Meg Tackle Imports, Inc., No. 18-cv-011715, 2021 WL 3493715, at *2 (D.N.J. Aug. 9, 2021) (concluding that the defendant corporation was properly served under Federal Rule of Civil Procedure 4(h)(1)(B) based on an affidavit stating that service was effected on an individual identified as the owner of the corporation).  This established a September 8, 2022 deadline for an answer to be filed.  Defendant, however, has failed to appear, answer, move, or otherwise respond to Plaintiffs' complaint.

On September 13, 2022, Plaintiffs filed a request with the Clerk of Court for entry of default pursuant to Federal Rule of Civil Procedure 55(a), which was granted the same day. (Doc. Nos. 5-6.)  After the entry of default, Plaintiffs filed the pending Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b) (Doc. No. 7) with a brief in support[2]

---

[1]  Counsel for Plaintiffs submitted an additional affidavit indicating that Defendant's current address was determined through a "skip trace" analysis after two prior attempts at effecting service were unsuccessful.  (Doc. No. 7-4 at 56); see also (id. at 61) (documenting that a skip trace was performed for Bruno Ventresca).

[2]  Plaintiffs' brief in support was refiled as a separate docket entry on March 1, 2023.  (Doc. No. 8.)

(Doc. No. 7-1).  Plaintiffs' motion demands that judgment be entered in its favor in the amount of $41,338.43 pursuant to Section 502 of ERISA, 29 U.S.C. § 1132(g)(2), with "post-judgment interest to accrue at the statutory rate."[3]  (Doc. Nos. 7, 7-5, 8.)  As Defendant has not responded to the pending motion for default judgment, the Court deems it unopposed.  Accordingly, Plaintiffs' motion is ripe for disposition.

## II.   LEGAL STANDARD

Default judgments are governed by a two-step process set forth under Rule 55 of the Federal Rules of Civil Procedure.  An entry of default by the Clerk of Court under Rule 55(a) is a prerequisite to a later entry of a default judgment under Rule 55(b).  See 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (3d ed. 2007) (noting that, "[p]rior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)").  Once the Clerk of Court has entered a default, the party seeking the default may then move the court to enter a default judgment under Rule 55(b)(2).  Entry of default does not entitle a claimant to default judgment as a matter of right.  10 James Wm. Moore et al., Moore's Federal Practice § 55.31 (Matthew Bender ed. 2010).  Indeed, it is well settled that decisions relating to the entry of default judgments are committed to the sound discretion of the district court.  See Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987).

---

[3]  Although Plaintiffs' complaint does not expressly seek post-judgment interest, post-judgment interest is included in their proposed order (Doc. No. 7-5), which the Court construes as a formal request.  See, e.g., Trustees of the Pipefitters & Plumbers Loc. 524 Pension & Annuity Plan v. Yannuzzi, Inc., No. 3:15-cv-02085, 2016 WL 4479394, at *4 (M.D. Pa. Aug. 25, 2016) (construing the "inclu[sion of] postjudgment interest in [the plaintiffs] proposed order" as a request for post-judgment interest); see also Bleecker v. Zetian Sys., Inc., No. 12-cv-02151, 2013 WL 5951162, at *2 (S.D.N.Y. Nov. 1, 2013) (explaining that "[a]lthough the Complaint did not seek relief in the form of post-judgment interest, such relief is mandatory under federal law").

3

Three factors control the exercise of the district court's discretion in assessing whether default judgment should be granted following the entry of default: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)).  Even so, a court may "enter a default judgment based solely on the fact that the default occurred" without considering the Chamberlain factors if the defendant has been properly served but fails to appear, plead, or defend an action.  See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 177 n.9 (3d Cir. 1990).

"A finding that default judgment is appropriate, however, is not the end of the inquiry." Martin v. Nat'l Check Recovery Servs., LLC, No. 1:12-cv-01230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016).  Prior to entering a default judgment, the Court must also determine whether the "unchallenged facts constitute a legitimate cause of action."  See Wright et al., supra, at § 2688; Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd., 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (stating that, "before granting a default judgment, the Court must . . . ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law'" (citations omitted)).  In conducting this inquiry, "the well-pleaded, factual allegations of the complaint . . . are accepted as true and treated as though they were established by proof."  See E. Elec. Corp. of N.J. v. Shoemaker Const. Co., 652 F. Supp. 2d 599, 605 (E.D. Pa. 2009) (citation omitted).  While the Court must accept as true the well-pleaded factual allegations of the complaint, the Court need not accept the moving party's factual allegations or legal conclusions relating to the amount of damages.  See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

4

### III.   DISCUSSION

Having reviewed the record, including Plaintiffs' complaint, motion for default judgment, supporting brief, and exhibits, the Court finds that entry of default judgment against Defendant and in favor of Plaintiffs is appropriate.  At the outset, the Court finds that the three <u>Chamberlain</u> factors weigh in favor of granting Plaintiffs' motion.  First, Plaintiffs will be prejudiced if the Court declines to enter default judgment, as they are unable to proceed with the action due to Defendant's failure to respond and have no other means of recovering against Defendant.  <u>See Broad. Music, Inc. v. Kujo Long, LLC</u>, No. 14-cv-00449, 2014 WL 4059711, at *2 (M.D. Pa. Aug. 14, 2014) (finding that the "[p]laintiffs will be prejudiced . . . by their current inability to proceed with their action due to Defendants' failure to defend").  Second, Defendant has not asserted any meritorious defenses to Plaintiffs' claims through the filing of an answer or other responsive pleading to the complaint, or through the filing of a response to the present motion. Accordingly, the Court is unable to conclude from Defendant's silence that it has a viable, litigable defense.  <u>See Laborers Loc. Union 158 v. Fred Shaffer Concrete</u>, No. 10-cv-01524, 2011 WL 1397107, at *2 (M.D. Pa. Apr. 13, 2011).  Third, despite being served with a summons and copy of the complaint (Doc. Nos. 4, 4-1, 4-2), Defendant has failed to enter an appearance or file an answer to the complaint and has offered no reasons for its failure to do so.  Accordingly, the Court cannot discern from the record any excuse or justification for Defendant's default apart from its own culpability.  <u>See Innovative Office Prods., Inc. v. Amazon.com, Inc.</u>, No. 10-cv-04487, 2012 WL 1466512, at *3 (E.D. Pa. Apr. 26, 2012) (explaining that "[a] defendant's default, or its decision not to defend against allegations in a complaint, may be grounds for concluding that the defendant's actions are willful").  For these reasons, the Court is satisfied that the <u>Chamberlain</u> factors counsel in favor entering default judgment.

Having determined that default judgment is appropriate, the Court turns to whether Plaintiffs' allegations, taken as true, constitute a legitimate cause of action under ERISA.  Two ERISA provisions are relevant to this inquiry: Section 515, 29 U.S.C. § 1145, and Section 502,  29 U.S.C. § 1132.  Section 515 provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."  See Bricklayers & Allied Craftsmen Int'l Union Loc. 33 Ben. Funds v. Am.'s Marble Source, Inc., 950 F.2d 114, 117 (3d Cir. 1991) (quoting 29 U.S.C. § 1145) (alteration in the original); 29 U.S.C. § 1145.  Section 502, in turn, provides a private cause of action "for an employer's failure to fulfill its obligations to make pension or welfare fund contributions pursuant to a plan or collective bargaining agreement."  See Am.'s Marble Source, Inc., 950 F.2d at 117 (citing  29 U.S.C. § 1132); 29 U.S.C. § 1132.  Section 502 also requires a court to award any plaintiff who receives a favorable judgment in an action to enforce Section 515 "unpaid contributions, interest on those unpaid contributions, liquidated damages [at a rate not to exceed twenty percent], and reasonable attorneys' fees and costs."  See Trustees of IBEW Loc. 400 Welfare, Pension, Annuity, Supplemental, & Joint Apprenticeship Training Funds for & on Behalf of Funds, & Bd. of Trustees v. Four Directions, Inc., No. 18-cv-09012, 2019 WL 687905, at *1 (D.N.J. Feb. 19, 2019) (citing 29 U.S.C. § 1132(g)(2)).

Here, the Court concludes that the following allegations in Plaintiffs' complaint, taken as true, plausibly state a claim under ERISA:

1.  "Defendant transacts business in Pennsylvania as a contractor or subcontractor in the construction industry and at all relevant times herein was an 'employer in an industry affecting commerce'";

2.  "Defendant was and is signatory and bound to a collective bargaining agreement with Laborers Union Local No. 1174, AFL-CIO, which requires Defendant to submit contribution reports and make contribution payments

to the Benefit Funds for hours its employees perform work covered by the collective bargaining agreement";

3.      "The Benefit Fund Plaintiffs' Restated Agreements and Declarations of Trust provide that an employer who fails to pay the amounts required when due shall be obligated to pay, in addition to the contributions owed, liquidated damages plus interest from the date due through the date of payment," as well as for reasonable attorney's fees and court costs; and

4.      "Defendant employed certain employees covered by the Collective Bargaining Agreement but failed to report and pay the amounts when due to the Benefit Funds for work performed in May 2021 through July 2021, and December 2021 through February 2022, as required by the Collective Bargaining Agreement and the Benefit Funds' Restated Agreements and Declarations of Trust."

(Doc. No. 1 ¶¶ 6-7; 13-15); see, e.g., Trustees of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Fortis Contractors, LLC, No. 1:22-cv-00727, 2023 WL 120459, at *2 (D.N.J. Jan. 6, 2023) (concluding that the plaintiffs had "sufficiently pled an ERISA violation" based on their allegations that the defendant "was subject to a CBA and failed to make contributions in whole or in part from June 1, 2021 through July 31, 2021"); Trustees of Nat'l Elec. Benefit Fund v. Mirarchi Bros., Inc., No. 21-cv-04399, 2022 WL 221610, at *4 (E.D. Pa. Jan. 24, 2022) (concluding that the plaintiffs had stated a claim under ERISA because the "[c]omplaint sufficiently allege[d] that [the] [d]efendants were delinquent on their contributions and that, pursuant to the CBAs, Trust Agreements, and ERISA § 502(g), the [t]rustees are entitled to recover the delinquent contributions, interest, and liquidated damages"). Accordingly, the Court will grant Plaintiffs' motion for default judgment.

Because the Court will grant Plaintiffs' motion for default judgment, it will also "award the[m] . . . [Defendant's] unpaid contributions, interest on those unpaid contributions, liquidated damages [at a rate not to exceed twenty percent], and reasonable attorneys' fees and costs" under Section 502 of ERISA. See Four Directions, Inc., 2019 WL 687905, at *1 (citing 29 U.S.C. § 1132(g)(2)); 29 U.S.C. § 1132(g)(2). Specifically, based on the summary of damages figures

7

and affidavits in support of Plaintiffs' motion (Doc. Nos. 7-3 at 2-4, 7-4 at 3-4, 6-9, 55-58, 8 at

6-9), the Court concludes that Plaintiffs are entitled to the following categories of damages,

totaling $41,338.43: (1) $25,299.25 for unpaid contributions to the Benefit Funds for the months

of December 2021 through February 2022; (2) $3,976.85 in interest owed on unpaid and late

paid contributions for the months of August 2021 through November 2021 and December 2021

through February 2022; (3) $8,475.33 in liquidated damages, assessed at a ten percent rate, for

the months of August 2021 through November 2021 and December 2021 through February

2022; (4) $2,750.00 in attorney's fees[4]; and (5) $837.00 in costs for this action.  See, e.g., Four

Directions, Inc., 2019 WL 687905, at *2 (awarding the plaintiffs damages for unpaid

contributions, interest, liquidated damages, and attorneys' fees and costs in an ERISA action

where the plaintiffs supported their motion for default judgment with sufficient documentation).

This judgment will accrue interest from the date of the entry of judgment until it is repaid in full

at the current legal rate under 28 U.S.C. § 1961, which "statutorily mandate[s]" interest on all

post-judgment debt.  See Talen Energy Mktg., LLC v. Aluminum Shapes, LLC, No. 19-cv-

04303, 2021 WL 534467, at *5 (E.D. Pa. Feb. 12, 2021); see also See Dunn v. HOVIC, 13 F.3d

---

[4]  Plaintiffs' counsel of record has submitted an affidavit certifying that a total of ten (10) hours
were expended litigating the above-captioned action at a negotiated hourly rate of $275.00.
(Doc. No. 7-4 at 55-56.)  This time was spent (1) drafting the complaint and accompanying
materials; (2) preparing materials and arranging for service of process; (3) preparing corporate
research on Defendant's address and arranging for service of process; (4) drafting and filing a
request for entry of default; and (5) drafting the motion for default judgment and the
accompanying summary of damages and declarations in support of the motion.  (Id. at 58.)  The
Court concludes that these fees are reasonable based on the nature of the case, the negotiated
hourly rate, and the services rendered by counsel.  See, e.g., Int'l Bhd. of Elec. Workers Union
No. 98 Health & Welfare Fund v. D'Narpo Elec., LLC., No. 21-cv-01923, 2022 WL 742735, at
*6 (E.D. Pa. Mar. 10, 2022) (finding reasonable a $395.00 hourly rate for twenty-one (21) hours
worked litigating a motion for default judgment in an ERISA action); Carpenters Health &
Welfare Fund of Philadelphia & Vicinity v. Reyes, No. 17-cv-05107, 2018 WL 3437212, at *4
(E.D. Pa. July 16, 2018) (finding reasonable a $340.00 hourly rate for litigating a motion for
default judgment motion for default judgment in an ERISA action).

58, 62 (3d Cir. 1993) (explaining that "post-judgment interest is awarded by statute as a matter of law so it is automatically added, whether or not the district court orders it").

IV.    **CONCLUSION**

Based on the foregoing, the Court will grant Plaintiffs' motion for default judgment. (Doc. No. 7.)  An appropriate Order follows.